J-S01013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADAM BRIGGS, PAULA BRIGGS, HIS WIFE, JOSHUA BRIGGS AND SARAH BRIGGS, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| | : | No. 1351 MDA 2017 |
| | : | |
| SOUTHWESTERN ENERGY PRODUCTION COMPANY | : : | |

Appeal from the Order Entered August 8, 2017
in the Court of Common Pleas of Susquehanna County
Civil Division at No(s): 2015-01253

BEFORE: GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 08, 2020**

This case returns to us following remand from the Pennsylvania Supreme Court. Specifically, our Supreme Court granted the Petition for allowance of appeal filed by Southwestern Energy Production Company ("Southwestern"), vacated our prior Order reversing the trial court's grant of summary judgment in favor of Southwestern, and remanded the case to us for further proceedings consistent with its Opinion.[1] ***See Briggs v. Sw. Energy Prod. Co.***, 224 A.3d 334 (Pa. 2020). Following careful review, we affirm the trial court's Order granting summary judgment in favor of Southwestern.

---

[1] Following remand, we granted each party permission to file a supplemental brief in support of their respective positions.

Adam Briggs, Paula Briggs, his wife, Joshua Briggs, and Sarah Briggs (collectively, "Appellants") initiated the underlying action by filing a Complaint on November 5, 2015. As the factual and procedural history underlying this appeal has previously been set forth in full, we decline to do so again at this juncture. *See Briggs v. Sw. Energy Prod. Co.*, 184 A.3d 153, 154-55 (Pa. Super. 2018); *see also Briggs*, 224 A.3d 334, 338-41 (Pa. 2020).

On direct appeal, Appellants argued that the extraction of natural gas from beneath their property constituted a trespass, and that the rule of capture[2] should not apply to natural gas extracted through the process of hydraulic fracturing. *See* Superior Court Brief for Appellant at 5-12. By contrast, Southwestern argued that it could not be found liable for trespass because 1) it had not entered Appellants' property or conducted any oil and gas activities thereon, and 2) the law of capture precludes trespass liability. *See* Superior Court Brief for Appellee at 14-29.

In addressing Appellants claims, this Court reviewed historical applications of the rule of capture to conventional oil and gas extraction. *Briggs*, 184 A.3d at 157-58. In particular, we noted that, historically, the rule of capture has been supported by the idea that "unlike other minerals,

---

[2] The rule of capture is "[a] fundamental principle of oil[ ]and[ ]gas law holding that there is no liability for drainage of oil and gas from under the lands of another so long as there has been no trespass and all relevant statutes and regulations have been observed." Rule of Capture, BLACK'S LAW DICTIONARY (10th ed. 2014).

[oil and gas] have the power and the tendency to escape without the volition of the owner." *Id.* at 157 (quoting *Westmoreland & Cambria Natural Gas Co. v. De Witt*, 18 A. 724, 725 (Pa. 1889)). Additionally, we examined the process of hydraulic fracturing, and how that process differs from conventional oil and gas extraction. *See id.* at 158-63; *see also id.* at 162 (stating that "shale must be fractured through the process of hydraulic fracturing; only then may the natural gas contained in the shale move freely through the 'artificially created channels.'" (brackets omitted) (citing *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 43 (Tex. 2008) (Johnson, J., dissenting)).

> Ultimately, we held that
>
> hydraulic fracturing may constitute an actionable trespass where subsurface fractures, fracturing fluid and proppant **cross boundary lines and extend into the subsurface estate of an adjoining property for which the operator does not have a mineral lease**, resulting in the extraction of natural gas from beneath the adjoining landowner's property.

*Briggs*, 184 A.3d at 163-64 (emphasis added). We also concluded that it was unclear from the record whether Southwestern's hydraulic fracturing operations resulted in a subsurface trespass to Appellants' property, and that Appellants' allegations had raised an issue as to whether a trespass occurred. *Id.* at 164. Accordingly, we reversed the trial court's Order granting summary judgment in favor of Southwestern, and remanded the case to the trial court for further proceedings (during which Appellants were to be afforded the opportunity to fully develop their trespass claim). *Id.*

Southwestern filed a Petition for allowance of appeal with our Supreme Court, which granted Southwestern's Petition to address the following issue:

> Does the rule of capture apply to oil and gas produced from wells that were completed using hydraulic fracturing and preclude trespass liability for allegedly draining oil or gas from under nearby property, where the well is drilled solely on and beneath the driller's own property and the hydraulic fracturing fluids are injected solely on or beneath the driller's own property?

*Briggs v. Sw. Energy Prod. Co.*, 197 A.3d 1168 (Pa. 2018).

A majority of our Supreme Court reversed this panel's decision. Specifically, the Supreme Court held that "the rule of capture remains extant in Pennsylvania, and developers who use hydraulic fracturing may rely on pressure differentials to drain oil and gas from under another's property, at least **in the absence of physical invasion**." *Briggs*, 224 A.3d at 352 (emphasis added). In other words, the rule of capture does not preclude trespass liability if the hydraulic fracturing operation creates a physical invasion. The Supreme Court then stated as follows:

> The Superior Court panel erred to the extent it assumed that either (a) the use of hydraulic fracturing alters this rule, or (b) where hydraulic fracturing is utilized, such physical invasion is a necessary precondition in all cases for drainage to occur from underneath another property. More broadly, insofar as the panel's decision may be construed to suggest that a natural-versus-artificially-induced-flow litmus should be employed to determine whether the rule of capture applies in a given situation, that standard rests on a false distinction and is disapproved.

*Id.*; *see also id.* at 347 (stating that this Court's prior holding must be premised on one of two "assumptions": "(a) the act of artificially stimulating the cross-boundary flow through the use of hydraulic fracturing solely on the

developer's property in and of itself renders the rule of capture inapplicable; or (b) … any time natural gas migrates across property lines resulting, directly or indirectly, from hydraulic fracturing, a physical intrusion into the plaintiff's property must necessarily have taken place."). Accordingly, the Supreme Court reversed our decision, and remanded the matter to this panel for reconsideration. *Id.*

In so doing, the Supreme Court stated that "it is not entirely clear whether the Superior Court's foundational assumptions for its holding that the rule of capture does not apply to wells completed using hydraulic fracturing— which we have now disapproved—were integral to its ultimate ruling." *Id.* at 351. Further, the majority stated that if, on remand, this panel determines that Appellants' Complaint alleges a physical invasion into their land, we must identify those allegations. *Id.* at 350 n.18. The majority also tasked us with determining whether Appellants sufficiently pled a trespass claim based on physical intrusion, and specified that a plaintiff "must use at least *some* words alleging physical intrusion…." *Id.* at 352 (emphasis in original); *see also id.* at 351-52 (indicating that use of the word "trespass" is insufficient to implicate a physical invasion, and stating that a plaintiff "must aver something more than mere drainage of minerals from the subject property….").

We turn now to address the Supreme Court's concerns. First, we clarify that our holding was not specifically premised on either "assumption." We declined to hold that the use of hydraulic fracturing, simply due to its

- 5 -

"artificial" nature, precludes application of the rule of capture, when the process is employed solely within the developer's property; nor did we conclude that any gas migration across property lines must necessarily mean that a physical intrusion occurred. Rather, we acknowledged the historic use of artificial means of enhancing mineral production, and relied on the "artificial" nature of the hydraulic fracturing process to illustrate that hydraulic fracturing can create a trespass in a way that more conventional methods of drilling cannot, *i.e.*, through horizontal drilling, or the injection of fluids and proppants into another's subsurface estate. *See Briggs*, 184 A.2d at 158 (reviewing *Jones v. Forest Oil Co.*, 44 A. 1074 (Pa. 1900)); *Briggs*, 224 A.3d at 348 (citing *Jones*, and stating that "the rule of capture applies although the driller uses further artificial means, such as a pump, to enhance production from a source common to it and the plaintiff—*so long as no physical invasion of the plaintiff's land occurs*." (emphasis added)). We also acknowledged that establishing a subsurface trespass would require the introduction of evidence. *See Briggs*, 184 A.3d at 163. Thus, we held only that hydraulic fracturing **may** constitute an actionable trespass where the subsurface fractures, and the fracturing fluid and proppants used in the process, cross over the boundary line, and extend into a property for which the energy company does not hold a valid mineral lease. *Briggs*, 184 A.3d at 163-64. In other words, the propulsion of fracturing fluid and proppants into an adjoining property can constitute a physical intrusion.

Next, we address whether Appellants may proceed on their physical-invasion trespass claim. *See Briggs*, 224 A.3d at 351 (directing this panel to consider this question on remand). In their Complaint, Appellants alleged as follows:

8. Adjacent and parallel to said land is a natural gas "unit" owned and operated by [Southwestern] entitled "SWN Innes South Gas Unit".

9. Also adjacent and parallel to said land is a natural gas "unit" owned and operated by [Southwestern] entitled "SWN Folger Gas Unit".

10. [Southwestern] has and continues to extract natural gas from the Marcellus Shale formation by way of wells located in the above[-]named units.

11. Said actions by [Southwestern] has and continues to extract natural gas from under the land of [Appellants].

12. Upon information and belief, said extraction of natural gas from under the land of [Appellants] is being done knowingly, willfully, unlawfully, outrageously and in complete conscious disregard of the rights and title of [Appellants] in said land and the natural gas thereunder.

COUNT 1 – TRESPASS

….

14. The actions of [Southwestern], as aforesaid, constitute a past and continuing trespass on the land of [Appellants].

15. As a direct and proximate result of said trespass, [Appellants] have been deprived [of] the value of said natural gas extracted from under their land by [Southwestern].

Complaint, 11/5/15, ¶¶ 8-15. Thus, Appellants' Complaint does not specifically allege that Southwestern engaged in horizontal drilling that

- 7 -

extended onto their property, or that Southwestern propelled fracturing fluids and proppants across the property line. **See Briggs**, 224 A.3d at 352-53 (explaining that the word "trespass" does not necessarily include all essential facts to establish the cause of action, and stating that a plaintiff "must use at least *some* words alleging physical intrusion…." (emphasis in original)).[3, 4] Accordingly, in light of the Supreme Court's guidance, we are constrained to reinstate the trial court's Order granting summary judgment in favor of Southwestern.

_____

[3] We acknowledge that we applied a more "interpretive gloss" to Appellants' allegations, when viewed as a whole. **See Briggs**, 224 A.3d at 350 n.18 (stating that "[o]ne *amicus curiae* supporting [Appellants] suggests an interpretive gloss be given to the Complaint's allegations: namely, that they were intended to convey that Southwestern placed its well close enough to [Appellants'] land that a physical intrusion became likely." (citing Brief for *Amicus* Protect PT at 5 n.4)). Throughout this litigation, Appellants have asserted that the placement of Southwestern's wells was specifically intended to extract natural gas from beneath Appellants' land. **See** Answer, 1/7/16, ¶¶ 44, 45, 47, 61.1, 92.1. Additionally, throughout several Interrogatories, Appellants sought to discern the distance between Southwestern's well bores, the distance between each well bore and Appellants' property line, and the distance around the well bore from which Southwestern reasonably anticipated extracting natural gas. **See** Motion to Compel, 5/16/16, Exhibit 1 (Interrogatories Directed to Defendant, Second Set), Exhibit 3 (Interrogatories Directed to Defendant, Third Set). These Interrogatories could be interpreted as an attempt by Appellants to determine whether a physical intrusion occurred. The trial court denied as moot Appellants' Motion to Compel answers to their Interrogatories when it granted summary judgment.

[4] We observe that the Supreme Court's holding leaves open for future plaintiffs the possibility of litigating trespass claims based on hydraulic fracturing, so long as they specifically plead that hydraulic fracturing resulted in a physical invasion of their property.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2020